IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH T., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-608 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Judith T. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion and denies plaintiff's motion.

**BACKGROUND**

Plaintiff protectively applied for SSI on October 21, 2020, alleging disability since March 13, 2020 due to a hernia, inability to lift over 10 pounds, left side pain, and anemia. Administrative Record ("R.") 172, 193. Born in October 1968, plaintiff was 52 years old as of the application date, making her a person closely approaching advanced age (age 50-54). 20 C.F.R. § 416.963(d); R. 172. She graduated from high

school and lives in an apartment with her fiancé and adult son. R. 44, 194. Plaintiff was a stay-at-home mother and has no past relevant work. R. 47.

The Social Security Administration denied plaintiff's applications initially on April 29, 2021, and upon reconsideration on September 7, 2021. R. 74-100. Plaintiff filed a timely request for a hearing and on March 29, 2022, she appeared before an administrative law judge ("ALJ"). R. 38. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Tobey Andre (the "VE").[1] R. 40-73. On May 4, 2022, the ALJ found that plaintiff's degenerative joint disease of the right ankle and knees, and varicose veins with venous insufficiency are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-21.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work. R. 22-30. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform a significant number of jobs available in the national economy. R. 30-31. As a result, the ALJ concluded that plaintiff was not disabled at any time from the October 21, 2020 application date through the date of the decision. R. 31-32. On November 29, 2022, the Appeals Council denied plaintiff's request for review. R. 1-6. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes*

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

*v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ: (1) erred in assessing the opinion evidence of record; (2) made a flawed RFC determination; and (3) improperly discounted her subjective statements regarding her limitations.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or a combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work;

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3

and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); *see also Melvin J. v. Kijakazi*, No. 20 CV 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B.  Analysis

    1.  **Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ did not properly evaluate the opinion evidence of record. Dkt. 17 at 6-10; Dkt. 31 at 1-6. Since plaintiff filed her claim in October 2020, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 416.920c(a). *See also Robert J. L. v. O'Malley*, No. 20 CV 50444, 2024 WL 809091, at \*2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to determine the "persuasiveness" of each medical opinion considering: "supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (citing 20 C.F.R. § 416.920c(c)(1)-(5)). "The most important of these factors are supportability and consistency"; indeed, "[t]he ALJ must explain its consideration of these two factors but need not address the remaining factors." *Id*. at 497.

On April 26, 2021, treating family physician Eva Dumasia, M.D., completed a physical RFC questionnaire indicating that plaintiff can barely function. According to Dr. Dumasia, plaintiff can: walk for one block without rest or severe pain; sit and stand for 15 minutes at a time; and sit and stand for less than two hours total in an eight-hour workday. R. 519-20. Plaintiff needs to use a cane, walk around for four

5

minutes every 30 minutes, shift positions at will, and take unscheduled five-minute breaks every 30 minutes due to muscular aches, chronic fatigue and diarrhea. R. 520. Dr. Dumasia further stated that plaintiff must elevate her leg above the knee on two pillows more than 50% of the time, can rarely lift less than 10 pounds and never lift anything heavier, and has 50% reduction in her ability to grasp, turn, and twist objects and perform fine manipulations. *Id*. Plaintiff would have good days and bad days but pain and other symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks. As a result of her impairments, plaintiff would be absent from work more than four days per month. R. 519, 521.

    The ALJ discussed this opinion and reasonably concluded that it was inconsistent with Dr. Dumasia's own treatment notes. R. 29. On the day Dr. Dumasia completed the questionnaire, plaintiff complained of difficulty walking, sitting, and standing, but a physical exam revealed only abdominal tenderness, pain and tenderness in the lumbar spine, swelling and decreased range of motion in the right knee, and decreased sensation in the right toes. R. 466. Dr. Dumasia failed to articulate why these general symptoms render plaintiff almost completely incapable of sitting, standing, or walking. Nor did Dr. Dumasia say anything about use of a cane, leg elevation, manipulative or lifting limitations, or difficulties with fatigue and concentration, restrictions that figure prominently in her opinion. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (it is well-established that an ALJ may

6

decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes.").

Plaintiff stresses that some of Dr. Dumasia's other treatment notes mention leg swelling, knee and abdominal pain, and lifting limitations, and argues that the ALJ improperly ignored these favorable findings. Dkt. 17 at 7-8; Dkt. 31 at 2-3. But the ALJ addressed all of Dr. Dumasia's records and fairly determined that none support the severe restrictions she imposed. Plaintiff's first visit with Dr. Dumasia, on December 23, 2020, was primarily for a gynecological exam. R. 23, 219. Though plaintiff complained of right ankle and knee pain and difficulty walking long distances, an exam showed only edema in the right leg with varicose vein and no tenderness. R. 23, 222. Dr. Dumasia advised plaintiff not to lift more than 10 pounds due to her November 2019 hernia repair. R. 224, 291-92.

When plaintiff returned to Dr. Dumasia on April 23, 2021, she continued to present with varicose veins in the legs but an exam was largely normal with no tenderness or edema. R. 25, 473-74. Nevertheless, Dr. Dumasia wrote a letter reiterating the 10 pound lifting restriction and declaring plaintiff unable to work due to abdominal pain. R. 29, 425-26. Though a follow-up exam on September 30, 2021 was largely unremarkable as well, Dr. Dumasia ordered a stress echo due to plaintiff's complaint that she could not walk. R. 26, 807-08. There was no change to plaintiff's condition as of November 29, 2021. R. 26, 769.

Plaintiff fails to explain how these records evidence a near-complete inability to sit, stand, walk, lift, use her hands, or concentrate as Dr. Dumasia opined.

7

Contrary to plaintiff's assertion, moreover, the ALJ provided a detailed recitation of the other medical evidence contradicting Dr. Dumasia's assessment. Dkt. 17 at 8-9; Dkt. 31 at 3-4. To begin, plaintiff's diagnostic records showed at most mild to moderate abnormality. R. 23, 24, 408, 409, 415, 447, 587, 689, 852, 955 (documenting minimal degenerative changes to the knees; mild to moderate degenerative joint disease of the right ankle; no deep venous thrombosis in the right leg but possible Baker's cyst; mild to moderate osteoarthritis of the knees; degenerative changes and trace fluid in the right ankle with mild os trigonum syndrome and plantar fasciitis; moderate tricompartmental arthritis in the right knee with osteophytes, patellar edema, and lateral meniscal tear; and degenerative changes in the lumbar spine, most pronounced at L2-L3).

In addition, treatment notes from other physicians do not document the significant functional limitations Dr. Dumasia indicated. In January 2021, vascular surgeon Taylor Hicks, M.D., observed prominent varicose veins in plaintiff's right leg and prescribed compression socks. R. 24, 574. On February 23, 2021, Adekunbi Lucas, A.P.R.N., an orthopedic nurse, assessed mild swelling in plaintiff's right knee, tenderness to palpation to the posterior knee, and a mildly antalgic gait with a normal stride length. R. 24, 584. She recommended physical therapy ("PT") and possible steroid injections. *Id*. On April 24, 2021, Muhammad Rafiq, M.D., conducted an internal medicine consultative examination of plaintiff. Dr. Rafiq noted that plaintiff was able to get on and off the exam table without difficulty, walk more than 50 feet without support but with an antalgic gait, and squat with

8

mild difficulty. R. 25, 438. Plaintiff had moderate difficulty standing on the right leg, no problem standing on the left leg, and an inability to hop on either leg. *Id*. A straight leg raise test was positive due to abdominal pain but plaintiff exhibited normal range of motion in all joints except the right ankle, full strength of 5/5 throughout except for the right ankle which was slightly reduced at 4-5/5, and normal sensation and reflexes. R. 25, 438-43.

On July 12, 2021, Dr. Hicks performed right great saphenous vein stripping with microphlebectomy and vein mapping, which went well. R. 25, 601, 604. By August 2021, plaintiff still had some swelling in the leg but no other complaints. R. 25-26, 667. Dr. Hicks recommended PT and compression. R. 26, 667. On September 20, 2021, plaintiff saw orthopedist Paul Leo, M.D., with ongoing knee pain that worsened at night and with bending down. R. 26, 670. Dr. Leo observed effusion, crepitus, and tenderness in the right knee, tenderness in the left knee, and tenderness in the right ankle with no swelling or deformity and full range of motion. R. 26, 671. Dr. Leo recommended PT. R. 26, 672. Plaintiff attempted PT in December 2021 but quit in January 2022 due to pain. R. 26.

At a follow-up orthopedic appointment on December 6, 2021, plaintiff had normal muscle strength, an antalgic gait, and effusion of the right knee. R. 26-27, 679. There was also tenderness in the knee. R. 27, 679. The doctor ordered an MRI because it was unclear what was causing plaintiff's pain. *Id*. Finally, on March 21, 2022, plaintiff saw Sara Diaz, M.D., to follow up on her right knee and ankle pain.

9

Plaintiff had developed significant right toe numbness and difficulty walking on the right foot. R. 27, 964. But she had full strength and sensation. R. 27, 964.

Plaintiff fails to explain how these records support the extreme exertional, manipulative, and non-exertional limitations set forth in Dr. Dumasia's opinion. R. 23-29. *See Alejandrina A. v. Kijakazi*, No. 20 CV 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record."). Instead, plaintiff faults the ALJ for mentioning one particular medical finding: that at the April 26, 2021 exam with Dr. Dumasia, plaintiff was oriented and well-nourished. Dkt. 17 at 9; Dkt. 31. Even accepting that this evidence does not undermine Dr. Dumasia's assessment of plaintiff's physical limitations, it arguably casts doubt on her opinion that plaintiff can barely focus. Notably, plaintiff says nothing about this mental aspect of Dr. Dumasia's opinion.

Also supporting the ALJ's conclusion is the fact that state agency reviewers Lenore Gonzalez, M.D. and James LaFata, M.D. both found plaintiff capable of: sitting, standing, and walking for six hours in an eight-hour workday; occasionally lifting 20 pounds; frequently lifting 10 pounds; frequently climbing ramps and stairs; frequently balancing, stooping, and crawling; and occasionally kneeling and crouching. R. 82-83, 91-92. The ALJ determined that both opinions were persuasive but imposed additional restrictions to account for plaintiff's complaints of pain, weakness, antalgic gait, and right ankle problems. R. 28, 29. Specifically, the ALJ

10

limited plaintiff to: standing and walking no more than four hours in an eight-hour workday; occasional use of the right lower extremity for foot controls; no concentrated exposure to unprotected heights; and no driving as part of her job duties. R. 22, 28.

Plaintiff argues that the ALJ did not provide any analysis to explain why she accepted the state agency opinions. Dkt. 17 at 10; Dkt. 31 at 4-6. The Court agrees that the ALJ's discussion could have been more fulsome. Nevertheless, the Seventh Circuit has made clear that a reviewing court should read an ALJ's decision holistically. *Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021). Here, the ALJ's detailed recitation of the medical evidence allows the Court to trace the ALJ's reasons for finding that the state agency opinions were supported by the record while Dr. Dumasia's opinion was not. R. 23-29.

There is finally no merit to plaintiff's assertion that the ALJ reversibly erred in considering the length of Dr. Dumasia's treatment relationship with plaintiff in evaluating the medical opinions. In plaintiff's view, it was illogical for the ALJ to discount Dr. Dumasia's opinion because she had only seen plaintiff three times prior to completing the RFC questionnaire, but credit opinions from state agency reviewers who never examined plaintiff at all. Dkt. 17 at 9-10; Dkt. 31 at 4-5. In making this argument, plaintiff ignores the fact that, unlike Dr. Dumasia, the state agency physicians conducted a longitudinal review of the entire record, which "strengthens the weight of their conclusions." *Thomas S. v. Kijakazi*, No. 1:22-CV-270, 2023 WL 2783196, at *5 (N.D. Ind. Apr. 5, 2023). *See also Stephanie A. v.*

*Kijakazi*, No. 21-CV-775-SPM, 2022 WL 1153464, at *8 (S.D. Ill. Apr. 19, 2022) (quoting SSR 96-6p, 1996 WL 374180, at *2) ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of medical issues in disability claims under the Act.").

Viewing the record as a whole, the ALJ did not commit any reversible errors in evaluating the opinions from her treating family physician and the state agency reviewers. "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of the opinion evidence is denied.

### 2. RFC Determination

Plaintiff next seeks reversal or remand on the grounds that the ALJ made a flawed RFC determination. Dkt. 17 at 10-14; Dkt. 31 at 6-9. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 CV 50153, 2023 WL 6388207, at *2

(N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 CV 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

Plaintiff first challenges the ALJ's conclusion that she is capable of standing and walking for four hours in an eight-hour workday, arguing that the ALJ did not provide sufficient analysis tying the evidence to that conclusion. Dkt. 17 at 11-12; Dkt. 31 at 6-8. For reasons already stated, when read as a whole, the ALJ's decision contains adequate explanation for the stated limitation. The ALJ discussed all of the medical evidence, was persuaded by the state agency reviewers' opinions that plaintiff can stand and walk for six hours in an eight-hour workday, and reduced the time by two hours to account for plaintiff's complaints of pain, weakness, antalgic gait, and right ankle problems. R. 23-29. The Court finds no error in this assessment. *Morales*, 103 F.4th at 471 ("ALJs are subject to only the most minimal of articulation requirements—an obligation that extends no further than grounding a decision in substantial evidence.").

The ALJ likewise did not err in rejecting plaintiff's claimed need to elevate her legs throughout the day to relieve swelling. Dkt. 17 at 12-13; Dkt. 31 at 8. Plaintiff does not cite any medical record where she reported raising her legs or was instructed to do so. *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) (ALJ permissibly discounted the plaintiff's testimony about elevating his legs where "there is no record evidence from [the plaintiff's] treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that [the plaintiff] reported."). Indeed, the one doctor who advised regular leg raising was Dr.

13

Dumasia, R. 520, but only in the opinion the ALJ reasonably rejected and not in any treatment notes. The ALJ considered plaintiff's testimony that she sometimes props her leg up when watching television, but also noted that exams routinely documented only mild or no swelling. R. 23-29, 60-61, 466, 584, 587, 589, 667, 671, 856. On the record presented, the ALJ did not err in omitting leg elevation from the RFC. *See Jacob W. v. Bisignano*, No. 22 CV 6520, 2025 WL 1787459, at *6 (N.D. Ill. June 27, 2025) (no error in rejecting plaintiff's testimony about leg elevation where "he never reported doing so" and his physician "never made such a recommendation in six years of treatment notes.").

Also unavailing is plaintiff's argument that the ALJ did not adequately consider her obesity. The ALJ expressly discussed plaintiff's obesity in accordance with SSR 19-2p, and found that it is not a severe impairment and does not result in any additional functional limitations. R. 17-19. Plaintiff notes that obesity "can have an aggravating effect" on musculoskeletal impairments. Dkt. 17 at 13-14; Dkt. 31 at 8-9. That may be, but plaintiff does not point to any medical records identifying restrictions caused by her obesity. Nor did she testify at the hearing about obesity-related limitations. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (no error in considering obesity where the plaintiff "did not articulate how her obesity exacerbated her underlying conditions and further limited her functioning—as it was her burden to do."). Plaintiff's mere speculation that her obesity could impact and aggravate her impairments is not sufficient. *See Stewart v.*

14

*Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted).

Viewing the record as a whole, the ALJ did not commit reversible error in determining plaintiff's RFC. Since that decision is supported by substantial evidence, it does not provide a basis for remand. *See Salvador H. v. Kijakazi*, No. 22 CV 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 587 U.S at 103) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

### 3. Subjective Symptom Evaluation

Plaintiff finally argues that the case must be reversed or remanded because the ALJ erred in finding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully supported. Dkt. 17 at 15-16; Dkt. 31 at 9-11. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 CV 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273,

15

1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff argues that the ALJ improperly discounted her statements regarding pain despite "multitudinous abnormal findings." Dkt. 17 at 15. The Court disagrees. The ALJ addressed plaintiff's complaints in detail, along with the measures she uses to control her symptoms such as heating pads and raising her leg. R. 22-23. The ALJ reasonably concluded, however, that the complaints were inconsistent with the objective medical records showing largely mild to moderate abnormalities. R. 22-23. *See, e.g., Gwendolyn B. v. Saul*, No. 20 CV 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Plaintiff contends that the ALJ still erred by failing to consider her activities of daily living. Again, the ALJ could have provided a more fulsome discussion, but she clearly considered plaintiff's ability to perform personal care, watch television, do some household chores, and watch her eight-year-old granddaughter, as well as her need for assistance from her adult son. R. 22-23. Moreover, contrary to

16

plaintiff's suggestion, the ALJ in no way equated plaintiff's ability to perform those activities with an ability to perform full-time work. *Id. See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (no error where the ALJ did not equate an ability to perform daily activities with an ability to work).

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). And "even if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements was not patently wrong and her request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [17] is denied, and the Commissioner's motion for summary judgment [23] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

                                                      **Jeannice W. Appenteng**
                                                      **United States Magistrate Judge**

Dated: 1/5/2026